Charles L. **HENKEL**, Jr., and Kathryn Henkel, Parents and Next Friends of Kristy M. Henkel, Petitioners,

v.

**SECRETARY OF THE DEPARTMENT OF HEALTH AND HUMAN SERVICES, Respondent.**

No. 90–3314V.

United States Court of Federal Claims.

Dec. 1, 1998.

Edward L. Allen, Fredericksburg, VA, for petitioners.

Karen P. Hewitt, Washington, DC, with whom was Frank W. Hunger, for respondent.

## ORDER

MILLER, Judge.

Petitioners have moved for review of the special master's decision denying compensation under the National Childhood Vaccine

Injury Act of 1986, 42 U.S.C.A. §§ 300aa–1—300aa–34 (West 1991 & Supp.1998) (the "Vaccine Act"). The issue on review is whether the special master can rely on medical records that conflicted with testimony by petitioners' parents and a witness for petitioners in finding that the infant's first seizures following her second vaccination occurred more than three days after the immunization. Argument is deemed unnecessary.

## FACTS

The special master found the following facts, which are not challenged. Kristy M. Henkel was born May 7, 1980, to Charles and Kathryn Henkel ("petitioners"). The first Diphtheria–Pertussis–Tetanus ("DPT") vaccination was given to Kristy at the age of two months on July 10, 1980. Subsequently, Kristy was fussy and cried frequently. She received her second vaccination at four months of age on September 9, 1980. Kristy thereafter exhibited symptoms including inconsolable screaming for long periods of time and feeding problems. Furthermore, following the second administration of the DPT vaccination, Kristy experienced a number of episodes in which she would arch, straighten, and roll her eyes. Dr. William Kappes, Kristy's pediatrician, expressed some concern that Kristy may be experiencing seizure activity. On October 7, 1980, Kristy had an abnormal EEG, which showed epileptogenic discharges. At this time Mrs. Henkel also indicated a history of colic, feeding problems, and irritability. On November 6, 1980, a neurologist diagnosed Kristy with tuberous sclerosis ("TS").

Mrs. Henkel informed another neurologist that Kristy's seizures had begun at the age of four months and that her neurological development was slow. Kristy's EEG was normal on November 17, 1980, and her hypsarrhythmia appeared resolved. She was seen by several other doctors during the next two years for various childhood-related problems. She had allergic reactions to various medications, including rashes, itching, and swelling, and continued to have crying spells. A medical record dated January 7, 1982, indicates that Kristy's seizures had ceased, and her medication was stopped. No contemporaneous medical evidence reflects that the seizures occurred during the applicable period table for injuries under the Vaccine Act. Contending that the second vaccination aggravated Kristy's pre-existing TS condition, petitioners filed a claim in this court on October 1, 1990.

Special Master Laura D. Millman held omnibus hearings on whether TS constituted a "factor unrelated" in the causation chain to the seizures. See 42 U.S.C.A. § 300aa–14; *Barnes v. Secretary of DHHS*, 1997 WL 620115 (Fed.Cl. Sept. 15, 1997), *aff'd sub nom. Hanlon v. Secretary of DHHS*, 40 Fed. Cl. 625, 629–30 (1998) (concluding that Government "successfully rebutted petitioners' presumption of significant aggravation of TS from DPT vaccine," and that each case must be examined individually). Thereafter, Special Master Millman held a hearing in this case to determine whether the infant's seizures began after the Table time period of three days, 42 U.S.C.A. § 300aa–14(a)(I), concluding that petitioners had failed to prove onset within the required time. *Henkel v. Secretary of DHHS*, No. 90–3314V, 1998 WL 667887, slip op. at 25 (Fed.Cl. Aug. 31, 1998).

## DISCUSSION

■ Petitioners charge that the decision denying compensation was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. Judicial review accords a highly deferential standard to the special master's decision. See 42 U.S.C.A. § 300aa–12(e)(2)(B); *see also Saunders v. Secretary of DHHS*, 25 F.3d 1031, 1033 (Fed. Cir.1994) (discussing standards of review applicable to different aspects of judgment); *Phillips v. Secretary of DHHS*, 988 F.2d 111, 112 (Fed.Cir.1993) (noting highly deferential standard of review regarding factual issues). A reviewing court may not substitute its own judgment for that of the special master. See e.g., *Snyder v. Secretary of DHHS*, 117 F.3d 545, 548 (Fed.Cir.1997). The special master is uniquely situated to judge the credibility of witnesses and her "credibility determinations are 'virtually unreviewable....'" *Bradley v. Secretary of DHHS*, 991 F.2d 1570, 1575 (Fed.Cir.1993) (quoting *Hambsch v. Depart-*

ment of the Treasury, 796 F.2d 430, 436 (Fed.Cir.1986)); see Phillips v. Secretary of DHHS, 988 F.2d 111, 112 (Fed.Cir.1993).

### 1. Sufficiency of petitioners' arguments

■ Challenging the factual sufficiency of the special master's 26-page double-spaced decision is petitioners' Memorandum of Objections consisting of one and one-half double-spaced pages. Not unremarkably, petitioners' effort leaves much for the reviewing court to discern, such as the specifics. Petitioners, in an opaque display of advocacy, argue:

> The lay testimony of those persons who cared for Kristy during this Table Time period establishes at least by a preponderance of the evidence that seizure onset began within the Table Time frame. The Special Master erroneously utilized affidavits endorsed by the pediatrician years after the event to refute the contemporaneous medical records and testimony at the hearing. See Transcript pp. 39–52.

The court is mindful that cases arising under the Vaccine Act involve wrenching issues affecting parents of deceased infants and the lives and well-being of severely compromised infants and children. These cases are not to be considered lightly. See Hodges v. Secretary of DHHS, 9 F.3d 958, 961 (Fed. Cir.1993) (stating that Congress assigned special masters for "the unenviable job of sorting through these painful cases"). Yet, although the Vaccine Act includes an extraordinary provision that awards attorneys' fees both for trial and appeal(s), absent any showing that respondent's conduct of the litigation is wanting, see 42 U.S.C.A. § 300aa–15(e)(1), nothing in the Vaccine Act displaces the proposition that a party must make its case on review. The judge is not responsible for scouring the record for factual mistakes or ferreting out facts that support a position that either side or the special master has overlooked. The judge is an arbiter, not an advocate or an apologist, and petitioners' advocacy in this case is severely wanting. As the United States Court of Claims explained in a similar case involving record review:

> The entire administrative record is before us, however, and the plaintiff has the bur-

den of establishing the fact that the record does not support the Board's finding. This it has failed to do. It is not the court's function to supply this deficiency by an independent excursion along the administrative trail.

Sundstrand Turbo v. United States, 182 Ct. Cl. 31, 60, 389 F.2d 406, 422–23 (1968) (citing cases); see also Hines v. Secretary of DHHS, 940 F.2d 1518, 1527–28 (Fed.Cir.1991) (discussing petitioner's burden before the special master).

The Vaccine Act establishes a unique two-tiered review system whereby the Court of Federal Claims initially reviews a special master's decision when challenged on the basis of its factual determination under the arbitrary or capricious standard, whereupon either party can elect to have the Federal Circuit review the Court of Federal Claims' decision to ascertain if the latter was arbitrary or capricious in reviewing the special master's decision for arbitrariness or capriciousness. A legal challenge is reviewed de novo. See Munn v. Secretary of DHHS, 970 F.2d 863, 868–73 (Fed.Cir.1992) (setting forth standards of review—factual findings under arbitrary and capricious standard; legal questions under de novo standard); see also Whitecotton v. Secretary of DHHS, 81 F.3d 1099, 1104 (Fed.Cir.1996) (stating that appeals court directly reviews special master's findings of fact under arbitrary and capricious standard). But see Snyder, 117 F.3d at 548 (indicating that review of factual determinations under arbitrary and capricious standard is de novo); Saunders, 25 F.3d at 1033 (same).

Irrespective of the standard under which the Federal Circuit reviews decisions of the Court of Federal Claims, the Court of Federal Claims' review differs from that of the Federal Circuit in one respect: The Vaccine Act provides that the Court of Federal Claims can set aside findings of fact that are found to be arbitrary or capricious and issue its own findings. 42 U.S.C.A. § 300aa–12(e)(2)(B). That the Court of Federal Claims can find facts on its own nonetheless does not displace the antecedent requirement that the court find those of the special mas-

ter to be arbitrary or capricious. The Federal Circuit stated in *Munn:*

> [T]he judge may set aside some or all of the findings of fact and conclusions of law of the special master, and issue different findings of fact and conclusions of law. To do this, however, requires that the judge first find that the disapproved findings and conclusions were arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law....

970 F.2d at 869. Because petitioners fail to identify the specific findings challenged as arbitrary or capricious, as well as the basis of their challenge, the authority of the Court of Federal Claims to make its own findings does not come into play.

### 2. *Contemporaneous medical records*

██ Petitioners do not inform the judge of what "contemporaneous medical records" the special master purported to refute in relying on the ones she cited and discussed in detail in the body of her decision. This is important because the Vaccine Act and the case law impress medical records with being the most reliable evidence. *See* 42 U.S.C.A. §§ 300aa–11(c)(1)(C)(i), 300aa–13(a)(1); *Bradley,* 991 F.2d at 1574 (discussing significance of medical evidence as a means of substantiating testimony). Indeed, the Federal Circuit has ruled that the special master can credit contemporaneous medical records over conflicting witness testimony, which is exactly what the special master did in this case. *See Cucuras v. Secretary of DHHS,* 993 F.2d 1525, 1528 (Fed.Cir.1993) (noting "that oral testimony in conflict with contemporaneous documentary evidence deserves little weight"); *see also Whitecotton,* 81 F.3d at 1107–08 (discussing scope of inquiry and special master's discretion with regard to evidence).

The special master cites the contemporaneous medical records upon which she relied:

> The court particularly refers to the records of Dr. Kappes on September 12, 1980, Dr. Leggett on October 3, 1980, Drs. Hunter and Leggett on October 10, 1980 at Waynesboro Community Hospital, and Dr.

Wilson on November 7, 1980 at the University of Virginia Hospital.

*Henkel,* slip op. at 21 n. 13.

None of these records supports petitioners' contention that Kristy suffered seizures within the required time frame. *See* 42 U.S.C.A. § 300aa–14(a)(I). In fact, the medical records cited by the special master support her finding in full. It is true that the special master made credibility determinations in favor of respondent's evidence over the testimony offered by both petitioners and their witness. The Federal Circuit countenances such a result, especially when, as here, the special master set forth her analysis and reasoning in support of her determination. *See Henkel,* slip op. at 21–26. Although the special master erred to the extent that she made credibility determinations in favor of an affiant, Dr. John Leggett, who obviously did not testify in person, this error does not render arbitrary or capricious special master's finding that the contemporaneous medical records are more reliable than the witnesses who testified at the hearing.

### 3. *Finding that TS caused seizures*

The special master wrote:

> It is clear that, even if Kristy's onset of seizures were within Table time of either of her DPT vaccinations, the opinion of her own pediatric neurologist, Dr. Dreifuss, would not enable petitioners to prevail. Yet, we need not reach that point because the court holds that the predominance of credible evidence indicates that Kristy's seizures began after Table time from her second DPT.

*Henkel,* slip op. at 25.

From this paragraph petitioners launch an objection that the special master found that "tuberculosis," Pets' Mem. at 1, caused Kristy's seizures. As respondent rejoins, the special master made no such finding. Because petitioners failed to prove the temporal requirement to warrant the Vaccine Act's presumption of causation, no finding on alternate causation was required. *See Bradley,* 991 F.2d at 1574.

Petitioners can be assured that the court has reviewed the record. However, the

court would be remiss in addressing arguments that petitioners do not make and evidence to which they do not cite.

## CONCLUSION

Accordingly, based on the foregoing, petitioners' Motion for Review is denied. The Clerk of the Court shall enter judgment dismissing the petition consistent with the Special Master's decision.

No costs on review.