June SHYFACE and Patricia Shyface, as legal representatives of the estate of Cheyenne Michael Shyface, Petitioners–Appellants,

v.

SECRETARY OF HEALTH AND HUMAN SERVICES, Respondent–Appellee.

No. 98–5078.

United States Court of Appeals, Federal Circuit.

Jan. 14, 1999.

Curtis R. Webb, Lloyd J. & Curtis R. Webb, of Twin Falls, Idaho, argued for petitioners–appellants.

Michael P. Milmoe, Trial Attorney, Torts Branch, Civil Division, Department of Justice, of Washington, DC, argued for respondent–appellee. With him on the brief were Frank W. Hunger, Assistant Attorney General, Helene M. Goldberg, Director, and John Lodge Euler, Deputy Director.

Before MAYER, Chief Judge, NEWMAN and CLEVENGER, Circuit Judges.

NEWMAN, Circuit Judge.

June and Patricia Shyface, grandmother and mother of Cheyenne Michael Shyface, appeal the judgment of the United States Court of Federal Claims[1] denying compensation under the National Childhood Vaccine Injury Act, 42 U.S.C. '300aa–1 et seq., for the death of Cheyenne. Because the Shyfaces established that Cheyenne's death was a vaccine injury in terms of '300aa–11(c)(1)(C)(ii), we reverse.

## BACKGROUND

Cheyenne was born on February 8, 1993. He received a combination Diphtheria–Pertussis–Tetanus (DPT) vaccine on April 1, 1993. His mother and grandmother testified as to the ensuing events.[2] On April 2 Cheyenne was less responsive and would not cry. On April 3 Cheyenne did not respond to his caregivers or to his environment; he did not move his head, grasp, vocalize, smile, or cuddle as before; he took no nourishment and very little water; he simply lay without response with glazed and staring eyes. When his diaper was changed, the leg in which the vaccine was injected jerked uncontrollably. On the evening of April 4, Cheyenne did move his eyes to some extent. However, Cheyenne developed a fever which rose precipitously in the early hours of the next day. On April 5, at 5:23 A.M., Cheyenne was brought to the emergency room with a temperature of 109 degrees Fahrenheit. He went into respiratory arrest immediately upon arrival. Despite ice applications and attempts at cardio-pulmonary resuscitation, Cheyenne was pronounced dead at 6:38 A.M. The death certificate listed cause of death as respiratory arrest due to 110 degree fever with dehydration and infection. An autopsy produced cultures demonstrating a modest growth of E.coli bacteria. June and Patricia Shyface claimed compensation under the Vaccine Act, relying upon either of the two methods of establishing entitlement under the Act. Under the Table method, the Shyfaces alleged that encephalopathy (an injury listed in the Vaccine Injury Table) occurred within the requisite 72–hour period, and that Cheyenne's death was a sequela of the encephalopathy. See '300aa–14(a)(I). Under the non-Table method, the Shyfaces alleged that Cheyenne's death was caused by the DPT vaccination. See '300aa–11(c)(1)(C)(ii). The Secretary of Health and Human Services recommended denial of the claim, on the ground that the E.coli infection (sepsis) was the principal cause of Cheyenne's death and was unrelated to the DPT vaccine.

An evidentiary hearing before the special master was held on September 16, 1996. William Torch, M.D., a pediatric neurologist, testified for the Shyfaces. Dr. Torch testified that Cheyenne's death was caused by the

---

1. Shyface v. Secretary of Department of Health and Human Servs., 39 Fed.Cl. 429 (Fed.Cl.1998).

2. The special master found the testimony of Patricia and June Shyface to be "candid and convincing" and was "convinced that events occurred as alleged."

high fever, resulting from a combination of the DPT vaccination and the E.coli infection. Dr. Torch testified that Cheyenne would not have died but for the DPT vaccination, that he would not have died but for the E.coli infection, and that it was the combination of the two that caused his death. Dr. Torch testified that he could not determine whether the DPT vaccination or the E.coli infection was the predominant cause of Cheyenne's death.

Lucy P. Rorke, M.D., a pathologist, and John McDonald, M.D., a pediatric neurologist, testified for the Secretary. Dr. Rorke testified that although there was no pneumonia evident in Cheyenne's air passages, it existed in the cell linings. Dr. Rorke acknowledged that Cheyenne's temperature was very unusual and that in her experience, infants with bacterial infections do not have a temperature of 110 degrees. Dr. McDonald opined that when one observes sepsis, whether at mild or moderate levels, one need look no further for another cause of death. Dr. McDonald testified that it has not been proven that DPT can cause permanent injury or death. Thus both Dr. Rorke and Dr. McDonald testified that an E.coli pneumonia caused Cheyenne's death.

The special master, considering this testimony, found that a preponderance of the evidence showed that Cheyenne sustained an encephalopathy, a Table injury, within the requisite 72–hour period. The special master also found that Cheyenne's death was causally related to the administration of the DPT vaccine, and that it was less likely that the E.coli infection alone caused Cheyenne's death:

> Dr. Torch argues persuasively that sepsis alone could not have caused Cheyenne's death; his temperature was much higher than would be expected in the case of an E.coli infection alone, particularly at the moderate levels of infection indicated by test cultures. The ultimate cause of death, hyperpyrexia, more likely was brought on by a combination of the two factors, E.coli and the pertussis vaccine both of which are known pyrogens (capable of causing fever)....

The special master determined that contrary to the Secretary's position, Cheyenne did not suffer an "overwhelming" and "fulminating" sepsis, since the levels of E.coli found during autopsy were "quite modest" and "far less" than expected in a case of overwhelming sepsis:

> The court gives weight to the fact that the levels of bacteria found on autopsy were quite modest, far less than expected in an overwhelming E.coli infection. Only a small number of bacteria were found in the bladder and the lung—certainly not an overwhelming condition. Dr. McDonald described one case of fatal E.coli infection observed in his own professional experience, but admitted that unlike this present case, "quite a bit" of E.coli bacteria was found in the lungs and blood samples. No other organisms were confirmed in Cheyenne's case....

The special master determined that the Secretary failed to prove that an overwhelming sepsis was the principal cause of death, and that the findings of the pathologist who performed the initial autopsy supported Dr. Torch's testimony that sepsis alone could not explain Cheyenne's death:

> Respondent's claim that the infection was "fulminating" or "overwhelming" is without sufficient foundation. When asked, Dr. Rorke admitted that the primary reason she suspects an "overwhelming" sepsis is not based on the pathological findings, but on the fact that the child died. Dr. McDonald also admitted as much. Reliance on such basis amounts to impermissible speculation.

> The court also gives weight to the fact that the pathologist who actually performed the initial autopsy, Dr. McKinley, is in apparent agreement with petitioners' expert, Dr. Torch. Dr. McKinley concluded that the autopsy findings were insufficient to explain Cheyenne's death. He was puzzled that the infant's reaction was out of proportion with what was found on autopsy.

The special master concluded that the Shyfaces proved by a preponderance of the evidence that Cheyenne suffered an encephalopathy within three days of his vaccination and that this Table injury was the cause of

his death. The special master also concluded that the Shyfaces proved that "Cheyenne's death was, in fact, causally related to the administration of the vaccine." The statutory compensation was awarded to the Shyfaces.

The Court of Federal Claims reviewed the special master's decision. The court noted that the Secretary "[did] not challenge the special master's factual determinations regarding the existence of an encephalopathy and fever, both of which were based on the credibility of testimony given by Patricia and June Shyface and their expert, Dr. Torch." Instead, the Secretary objected to the special master's decision on the legal grounds that the Shyfaces had not proven an encephalopathy under the recently revised Vaccine Injury Table regulations, *see* 42 C.F.R. '100(b)(2),[3] and had not proven that the vaccine had actually caused Cheyenne's death.

The Court of Federal Claims remanded for further findings of fact and conclusions of law. Referring to the Table and non-Table methods, the court ruled that "the special master must ascertain whether and exactly how petitioners sustained their burden under either method, or both." The court determined that the special master had failed to apply the recently revised Vaccine Injury Table regulations, 42 C.F.R. '100.3(b)(2), to determine whether the severity and durational elements of encephalopathy were present. The court also held that the special master, in addressing the actual causation, non-Table injury method, did not explain "how, on the basis of Dr. Torch's testimony, petitioners have shown actual causation, or a direct nexus between the vaccine and Cheyenne's death."

On remand, the special master applied the revised regulations and determined that the Shyfaces did not prove that Cheyenne met the recently revised requirements of a Table injury of encephalopathy, and that the Shyfaces did not prove that the vaccine was the predominant cause of Cheyenne's death.

The special master reviewed Dr. Torch's testimony:

> Dr. Torch does not retreat from his opinion that the vaccine carries the weight of the blame for Cheyenne's death. However, his testimony, as a whole, supports both sources as cause:

> [Q] Is there any way of telling ... any scientific way of determining which of those two is more responsible for the high temperature. [A] I don't believe so. I don't know how much you could attribute to each etiology. I cannot go so far that one predominated over the other in terms of the death itself. But he would not have died without the vaccine.

Tr. at 100–101.

The special master determined that the Shyfaces had not met their burden of proving causation, in view of the evidence that both the vaccine and the infection contributed to Cheyenne's death:

> In reading the printed text of the transcript, one does not sense fully the level of conviction with which Dr. Torch presented his opinion that "but for" the vaccine, Cheyenne would not have died. Upon review, however, I now find that Dr. Torch's testimony is insufficiently persuasive to establish that death, in fact, was caused by the vaccine. Petitioners evidence of a vaccine-related cause stands possibly in equipoise, but no better. As even Dr. Torch conceded, it is impossible to know with any degree of confidence, which source is the predominant cause of death.

> Respondent's evidence is equally persuasive. Without the benefit of the statutory presumption conferred by the presence of a Table injury, and because petitioners have the burden of affirmatively proving a vaccine-related cause, it is my opinion that petitioners cannot prevail on the record as it stands. I base my conclusion on my determination that petitioners have failed to carry their burden of proof.

**3.** In February 1995 the Department of Health and Human Services revised the Vaccine Injury Table and promulgated new regulations for proving an encephalopathy. The changes became effective on March 10, 1995, and the Shyfaces filed their claim on April 4, 1995. The revised Table requires stronger proof of an encephalopathy.

The Court of Federal Claims, sustaining the special master's denial of compensation, held that it must be shown that the vaccine was the actual cause of death, and that the "but for" standard is insufficient:

> Both before the special master and again in the motion for review, petitioners argue that the regulation does not require them to prove that the vaccine was the sole cause of death, but only that it was a significant cause of death. According to the petitioners, the special master erred by evaluating whether the DPT vaccination was the "predomina[nt] cause" of the infant's death, rather that assessing if "but for" the vaccination, the infant would not have died. The concept of "but for" causation derives from traditional negligence standard in tort law. The Vaccine Act, however, is a no-fault compensation scheme whereby relief is granted only when the vaccine is shown actually to have caused a vaccine-related injury. The standard of "actual causation" is more stringent than the "but for" standard, which is reasonable given the no-fault nature of the Vaccine Act.

(Citations omitted.) The trial court entered judgment for the Secretary, and the Shyfaces appealed their non-Table claim.

## DISCUSSION

The issue is whether the Shyfaces established entitlement to compensation by proving that Cheyenne's DPT vaccine was a but-for cause of his death. Because the Shyfaces established that the DPT vaccine was a but-for cause of and a substantial factor in Cheyenne's death, we conclude that the Shyfaces are entitled to compensation.

## A

The Shyfaces argue that there was a preponderance of evidence that the DPT vaccine "caused" Cheyenne's death as contemplated in the words of the statute:

**'300aa–11(c) Petition content**

A petition for compensation under the Program for a vaccine-related injury or death shall contain—

(1) except as provided in paragraph (3), an affidavit, and supporting documentation, demonstrating that the person who suffered such injury or who died—

\* \* \*

(C)(ii)(I) sustained, or had significantly aggravated, any illness, disability, injury, or condition not set forth in the Vaccine Injury Table but which was caused by a vaccine referred to in subparagraph (A), or

(II) sustained, or had significantly aggravated, any illness, disability, injury, or condition set forth in the Vaccine Injury Table the first symptom or manifestation of the onset or significant aggravation of which did not occur within the time period set forth in the Table but which was caused by a vaccine referred to in subparagraph (A). . . .

The Shyfaces state that the Court of Federal Claims erred in ruling that this causation required that the DPT vaccination was the "predominant cause" of Cheyenne's death. According to the Shyfaces, the law of torts is the source of the statute's rule of causation, and tort law does not require that the DPT vaccine was the "predominant cause" of Cheyenne's death, but only that the DPT vaccine was a "but for" cause of Cheyenne's death.

The Shyfaces cite *Grant v. Secretary of Health and Human Servs.*, 956 F.2d 1144 (Fed.Cir.1992) as supporting the position that the statutory causation requirement is drawn from tort law. The *Grant* court, in discussing the required showing of causation in non-Table injuries, cited *Hasler v. United States*, 718 F.2d 202, 205 (6th Cir.1983), a Federal Tort Claims Act decision arising from vaccination against swine flu. *Hasler* applied the law of Michigan, the state in which Grant could have pursued a traditional tort claim. Accordingly, the Shyfaces argue that in the case at bar, the court should look to Montana law to determine whether there was a sufficient showing of causation. Montana applies the "but for" test for causation. *See Busta v. Columbus Hosp. Corp.*, 276 Mont. 342, 370,

916 P.2d 122 (1996). The Shyfaces argue that the special master's determinations establish that Cheyenne's DPT vaccine was a "but for" cause of Cheyenne's death, and that in accordance with Montana law liability has been established. The Shyfaces add that the "but for" test finds support in the Restatement (Second) of Torts.

The Secretary disagrees, citing our decisions in *Grant, supra,* and *Munn v. Secretary of Department of Health and Human Servs.,* 970 F.2d 863 (Fed.Cir.1992). In *Grant* we stated that the Vaccine Act "does not relax proof of causation in fact for non-Table injuries." 956 F.2d at 1147. In *Munn* we stated: "The claimant must prove by a preponderance of the evidence that the vaccine, and not some other agent, was the actual cause of the injury. Given the vagaries of human illnesses, particularly in young children, that is not always an easy burden to carry." 970 F.2d at 865. The Secretary states that the Shyfaces had to demonstrate that the vaccine caused the injury, applying the preponderance of the evidence standard, meaning that they had to demonstrate "that the vaccine is more likely than any other factor to have been directly responsible for the injury." That is, the Secretary argues that precedent requires more than showing that the injury would not have occurred but for the vaccination. In *Abbott v. Secretary of Department of Health and Human Servs.,* 27 Fed. Cl. 792 (1993), *aff'd in part, rev'd in part and remanded,* 19 F.3d 39 (Fed.Cir. 1994), when a child drowned in a bathtub after suffering a seizure that was presumptively vaccine-related, the Court of Federal Claims held, and the Federal Circuit affirmed, that:

> [The child's] death was not due to pathological forces set in motion by his vaccine injury. Rather, his death was the result of a suffocation brought on by an external force—the filling of his lungs with water.... His death, therefore, was an accident, precipitated perhaps by his disorder but not the *medical* consequence of that disorder.

Similarly, the Secretary argues, Cheyenne's death was not due to forces set in motion by the vaccine, but rather by an existing and overwhelming sepsis. The Secretary argues that Cheyenne's death was not the "medical consequence" of a vaccine injury, even if he suffered a vaccine-associated fever from which he died.

The Secretary adds that application of the "but for" test would fundamentally undercut the Vaccine Act's framework as established by Congress. The Secretary argues that the Shyfaces reliance on Montana law and the Restatement is misplaced, since the Vaccine Act is not a negligence-based system and does not employ negligence-based standards. The Secretary argues that the petitioners should be held to the same standard of proof as the Secretary in the rebuttal case. The statute provides that the petitioner must establish causation by a preponderance of the evidence, and compensation may be awarded only if there is not a preponderance of the evidence that the injury was due to factors unrelated to the administration of the vaccine:

'300aa–13(a) General Rule

(1) Compensation shall be awarded under this Program to a petitioner if the special master or court finds on the record as a whole—

(A) that the petitioner has demonstrated by a preponderance of the evidence the matters required in the petition by section 300–aa–11(c)(1) of this title, and

(B) that there is not a preponderance of the evidence that the illness, disability, injury, condition, or death described in the petition is due to factors unrelated to the administration of the vaccine described in the petition.

The special master or court may not make such a finding based on the claims of a petitioner alone, unsubstantiated by medical records or by medical opinion.

The Secretary points out that in rebutting with evidence of factors unrelated to the vaccine, it is not enough for the Secretary to establish that other factors merely contributed to producing the injury. Instead, the Secretary must prove that the "factors unrelated" were "principally responsible" for causing the injury:

'300aa–13(a)(2) For purposes of paragraph (1), the term "factors unrelated to the administration of the vaccine"-

(A) does not include any idiopathies, unexplained, unknown, hypothetical, or undocumentable cause, factor, injury, illness, or condition, and

(B) may, as documented by the petitioner's evidence or other material in the record, include *infection, toxins,* trauma (including birth trauma and related anoxia), or metabolic disturbances which have no known relation to the vaccine involved, but which in the particular case are shown to have been the agent or agents *principally responsible for causing* the petitioner's illness, disability, injury, condition, or death.

(Emphases added.) The Secretary argues that the statutory use of "preponderance of the evidence" in both '300aa–13(a)(1)(A) (referring to the petitioner's burden) and '300aa–13(a)(1)(B) (referring to the Secretary's burden) indicates that the petitioners should be held to the same burden in proving causation as the Secretary is held in proving "factors unrelated." The Secretary states that the statute is not satisfied if the petitioner shows only that the vaccine contributed equally to the injury and was a "but-for" cause of death.

There is a dearth of precedent discussing the requirements for *prima facie* causation. The court in *Grant* stated that "the Vaccine Act does not relax proof of causation in non-Table injuries." The Shyfaces state that in accordance with *Munn* they proved "by a preponderance of the evidence that the vaccine, and not some other agent, was the actual cause" of Cheyenne's death. Addressing the Secretary's argument that petitioners should be held to the same burden of proof when proving causation as the Secretary is held when proving "factors unrelated", the Shyfaces argue that the elevated burden placed on the Secretary in proving a "factor unrelated" is imposed by statute and is unique to the Secretary's proof of a "factor unrelated". The Shyfaces argue that the statute requires that petitioners "demonstrate by a preponderance of the evidence", '300aa–13(a)(1)(A), that the injury "was caused by a vaccine", '300aa–11(c)(1)(C)(ii). In contrast, the statute requires that in rebutting *prima facie* causation, the Secretary must prove by a "preponderance of the evidence", '300aa–13(a)(1)(B), that agents other than the vaccine are "principally responsible for causing the petitioner's illness", '300aa–13(a)(2)(B). Thus, according to the Shyfaces, the statute in formulating the Secretary's burden combines "principally responsible" with the term "causing" to yield a higher standard than "causation" alone.

In *Knudsen v. Secretary of Department of Health and Human Servs.*, 35 F.3d 543 (Fed. Cir.1994), this court stated:

As the Knudsens agree, the standards that apply to a petitioner's proof of actual causation in fact in off-Table cases should be the same as those that apply to the government's proof of alternative actual causation in fact.

*Id.* at 549. The Shyfaces argue that notwithstanding this language, *Knudsen* did not hold broadly that the standard for a petitioner's proof of actual causation in non-Table cases should be the same as the standard for the Secretary's proof of alternative actual causation; *Knudsen* turned on whether the Secretary, in proving "factors unrelated", '300aa–13(a)(2), was required to identify the specific virus that was principally responsible for causing the petitioner's encephalopathy. According to the Shyfaces, the "standards" referred to in the quoted portion of *Knudsen* refer to the level of detail or specificity required concerning how the vaccine or other agent caused an injury. Thus the Shyfaces argue that *Knudsen* did not establish the burden of proof for all cases.

**B**

■ The Vaccine Act allows a petitioner to establish *prima facie* entitlement to compensation using the non-Table method, *i.e.,* by showing that the injury was "caused" by the vaccine. *See* '300aa–11(c)(1)(C)(ii). The parties offer divergent interpretations of the statutory word "cause". This issue of statutory interpretation receives plenary review. Because the statute does not elaborate on the

requirement of causation in the proof of a non-Table case, we turn to the legislative history of the Vaccine Act. *See Grant,* 956 F.2d at 1147–48.

The legislative history provides some guidance in ascertaining Congressional intent with respect to the "but for" standard proposed by the Shyfaces and the "predominant cause" standard proposed by the Secretary. The House Report concerning '300aa–11 states:

> If the petitioner sustained or had significantly aggravated an injury not listed in the Table, he or she may petition for compensation. If the petitioner sustained or had significantly aggravated an injury listed in the Table but not within the time period set forth in the Table, he or she may petition for compensation. *In both of these cases, however, the petition must affirmatively demonstrate that the injury or aggravation was caused by the vaccine.* Simple similarity to conditions or time periods listed in the Table is not sufficient evidence of causation; *evidence in the form of scientific studies or expert medical testimony is necessary to demonstrate causation for such a petitioner.* (Such a finding of causation is deemed to exist for those injuries listed in the Table which occur within the time period set forth in the Table.) The Committee does not intend, however, to suggest that variance from the Table should act as a presumption against the petitioner but rather only that *such a petitioner is not to be deemed eligible for compensation without further showings of causation.*

H.R.Rep. No. 99–908 at 15 (1986) U.S.Code Cong. & Admin.News 1986, at 6287, 6356 (emphases added). The legislative history of '300aa–13, the provision relating to the Secretary's rebuttal of a *prima facie* case, is also helpful, for although it does not deal with all of the legal nuances of causation, it reaffirms the burden on the Secretary:

> In its determination that the injury was not caused by factors unrelated to the vaccine, the court may rely on evidence of other infections, traumas, or conditions but is not to include speculative or hypothetical matters or explanations. *If the injury is not demonstrated to have been caused by*

*other, defined illnesses or factors* and the injury is demonstrated to have met the other requirements of Section 2111 [codified at '300aa–11] and the Table, the injury is to be *deemed to be vaccine-related.*

> The Committee recognizes that there is public debate over the incidence of illnesses that coincidentally occur within a short time of vaccination. The Committee further recognizes that the deeming of vaccine-relatedness adopted here may provide compensation to some children whose illness is not, in fact, vaccine-related.

*Id.* at 18, U.S.Code Cong. & Admin.News 1986, at 6359 (emphases added).

As we have mentioned, the Shyfaces argue that determination of causation in non-Table cases invokes the law of the state in which the tort claim would have been brought, and that in Montana the "but for" test controls causation. The Secretary replies that in a non-Table case involving concurrent causes, unless the petitioner can prove that the vaccine was the predominant or principal cause of injury, the petitioner has not presented the requisite *prima facie* case and the Secretary need not demonstrate an alternate cause.

The absence of elaboration of the law of causation in the legislative history leads us to conclude that the Vaccine Act's requirement of causation in non-Table cases was not viewed as distinct from causation in the tort law. However, at the threshold, we do not agree with the Shyfaces that the applicable law is the law of the state in which the tort claim could have been brought. The purpose of the Vaccine Act was to establish a compensation program under which awards could be made to vaccine-injured persons "quickly, easily, and with certainty and generosity." H.R.Rep. No. 99–908 at 3, U.S.Code Cong. & Admin.News 1986, at 6344. National uniformity in administration is implicit in the statutory scheme. This purpose would not be served by requiring recourse to varying state negligence laws in determining causation.

■ A uniform approach, one which implements the statutory purpose, is that of the Restatement (Second) of Torts. The general provision for the requirement of causation in establishing tort liability provides useful

analogy to the overall terms of the Vaccine Act. The Restatement proposes:

### '430. Necessity of Adequate Causal Relation

In order that a negligent actor shall be liable for another's harm, it is necessary not only that the actor's conduct be negligent toward the other, but also that the negligence of the actor be a *legal cause* of the other's harm.

'430 (emphasis added). The Restatement then defines "legal cause":

### '431. What Constitutes Legal Cause

The actor's negligent conduct is a legal cause of harm to another if

(a) his conduct is a substantial factor in bringing about the harm, and

(b) there is no rule of law relieving the actor from liability because of the manner in which his negligence has resulted in the harm.

### '432. Negligent Conduct as Necessary Antecedent of Harm

(1) Except as stated in Subsection (2), the actor's negligent conduct is not a substantial factor in bringing about harm to another if the harm would have been sustained even if the actor had not been negligent.

(2) If two forces are actively operating, one because of the actor's negligence, the other not because of any misconduct on his part, and each of itself is sufficient to bring about harm to another, the actor's negligence may be found to be a substantial factor in bringing it about.

Thus the Restatement provides that the "but for" criterion is necessary, but not sufficient, to establish causation due to a negligent action; that action must also be a substantial factor in causing the injury. *See* '431 cmt. a ("In order to be a legal cause of another's harm, it is not enough that the harm would not have occurred had the actor not been negligent. Except as stated in '432(2), this is necessary, but it is not of itself sufficient. The negligence must also be a substantial factor in bringing about the plaintiff's harm.") On this definition, we disagree with the Shyfaces that but-for causation is sufficient to establish liability, for as the Court of Federal Claims observed, "the standard of 'actual causation' is more stringent than the 'but for' standard."

We adopt the Restatement rule for purposes of determining vaccine injury, that an action is the "legal cause" of harm if that action is a "substantial factor" in bringing about the harm, and that the harm would not have occurred but for the action. *See* '431. The Restatement recognizes that concurrent forces may bring about a single harm, requiring weighing the contributing factors:

There are frequently a number of events each of which is not only a necessary antecedent to the other's harm, but is also recognizable as having an appreciable effect in bringing it about. Of these the actor's conduct is only one. Some other event which is a contributing factor in producing the harm may have such a predominant effect in bringing it about as to make the effect of the actor's negligence insignificant and, therefore, to prevent it from being a substantial factor. So too, although no one of the contributing factors may have such a predominant effect, their combined effect may, as it were, so dilute the effect of the actor's negligence as to prevent it from being a substantial factor.

'433 cmt. d. The Restatement further provides:

In order that a negligent actor may be liable for harm resulting to another from his conduct, it is only necessary that it be a legal cause of the harm. It is not necessary that it be *the* cause, using the word "the" as meaning the sole and even the predominant cause.

'430 cmt. d (emphasis in original).

■ This rule that the vaccine must be a substantial factor in bringing about the harm accords with the legislative history of the Vaccine Act. Implementing this principle in terms of the Vaccine Act statutory provisions, establishment of *prima facie* entitlement to compensation according to the non-Table method would require the petitioner to prove, by a preponderance of the evidence, that the vaccine was not only a but-for cause of the injury but also a substantial factor in bringing about the injury. As discussed in *Grant,* 956 F.2d at 1148, in order to show

that the vaccine was a substantial factor in bringing about the injury, the petitioner must show "a medical theory causally connecting the vaccination and the injury." There must be a "logical sequence of cause and effect showing that the vaccination was the reason for the injury." *Id.*

### C

■ The Shyfaces established, by a preponderance of evidence, that the DPT vaccination was a substantial factor contributing to and bringing about Cheyenne's death. The facts are undisputed. The special master found that Cheyenne would not have died but for the DPT vaccination, and that the DPT vaccine contributed to Cheyenne's death by causing him to experience an exceptionally high fever. The special master also found that the sepsis was not the predominant cause of his death. Thus although the Shyfaces did not prove that the DPT vaccine was the only or predominant cause of his death, the requirements of the Vaccine Act are met *prima facie* upon proof of the substantial factor criterion. We have not been shown reversible error in the special master's finding that the Secretary failed to prove that factors unrelated to the vaccine were principally responsible for Cheyenne's death. *See* '300aa–13(a)(2)(B). Therefore, the Shyfaces established entitlement to compensation by showing that the DPT vaccine was both a but-for cause of and a substantial factor in Cheyenne's death. The petitioners shall be awarded the statutory compensation for the vaccine-related death of Cheyenne. The decision of the Court of Federal Claims is reversed.

Costs to petitioners.

*REVERSED*