Donna S. GUILLORY, Petitioner,

v.

The UNITED STATES, Respondent.

No. 99–651V.

United States Court of Federal Claims.

Aug. 28, 2003.

Bobby Ray T. Malbrough, Metairie, LA, for petitioner.

Tami C. Parker, with whom were Robert D. McCallum, Assistant Attorney General, Helene M. Goldberg, Director, John Lodge Euler, Deputy Director, Mark W. Rogers, Assistant Director, and Gabrielle Manganiello, Assistant Director, Civil Division, U.S. Department of Justice, Washington, DC, for respondent.

*OPINION*

HEWITT, Judge.

Petitioner Donna S. Guillory seeks review of the special master's denial of compensation under the National Vaccine Injury Compensation Program (Vaccine Act). 42 U.S.C. §§ 300aa–10 to 300aa–34 (2000). In an unpublished decision filed on March 28, 2003, the special master concluded that petitioner failed to present a prima facie case that Hepatitis B vaccinations caused her neurological defects. *Guillory v. Sec'y of Health & Human Servs.,*[1] No. 99–651 V, Slip. Op. at 1, 6 (Fed.Cl.Spec.Mstr. Mar. 28, 2003) (Slip. Op.). Petitioner filed this appeal timely on April 23, 2003. Petitioner's Request for Review of Decision of Special Master (Mot.) at 1. For the reasons set forth below, petitioner's motion for review is DENIED.

## I. Background[2]

In 1992, Ms. Guillory worked at St. Jude Medical Center (Medical Center) in Kenner, Louisiana, as an electroneurodiagnostic technologist. Slip. Op. at 2. Ms. Guillory participated in the Medical Center's campaign to immunize employees against Hepatitis–B and received her first Hepatitis–B vaccination on July 10, 1992. *Id.* at 2–3. Following this vaccination Ms. Guillory experienced chills, sweats, and site tenderness that ended within 48 hours. *Id.* at 3.

Ms. Guillory received her second Hepatitis–B vaccination on August 10, 1992. Slip. Op. at 3. She again experienced chills, sweats, and site tenderness for a few days. *Id.* On August 14, 1992, Ms. Guillory underwent elective, outpatient surgery for removal of a "left wrist dorsal ganglion cyst." *Id.* Ms. Guillory noted numbness in her face after awakening from a nap on August 15, 1992. *Id.* She was advised by emergency room personnel that she "probably slept wrong." *Id.* She felt "okay" for a couple of days but, on August 17, 1992, she "really wasn't feeling well." *Id.* According to Dr. Terence D'Souza (Dr. Souza), a neurologist with whom she

worked, Ms. Guillory appeared "unsteady" and walked with a "slightly broad-based gait." *Id.*

Dr. Souza performed a brief, informal neurological examination of Ms. Guillory to rule out a brain tumor and also recommended a magnetic resonance imaging (MRI) study to rule out a stroke. Slip. Op. at 3. The MRI was normal but as a precaution Dr. Souza recommended that Ms. Guillory discontinue birth control pill use and institute aspirin therapy. *Id.*

Within a week, most of Ms. Guillory's symptoms subsided but she continued to have intermittent tingling around the mouth for several months. Slip. Op. at 3. She did not seek medical attention for these symptoms. *Id.*

On January 15, 1993, Ms. Guillory received her third Hepatitis B vaccination. Slip. Op. at 3. While driving home she experienced swelling of the feet. *Id.* at 3–4. Later that evening she developed a rash that covered her abdomen, chest, and neck. *Id.* at 4. Ms. Guillory contacted the nurse who administered the vaccination and was advised to take Benadryl. *Id.* On January 16, 1993, Ms. Guillory experienced flu-like symptoms, including chills and sweats. *Id.*

On May 27, 1993, Ms. Guillory awoke with pressure in her head and pain in her spine that radiated into both of her legs. Slip. Op. at 4. She fell when she attempted to stand. *Id.* Ms. Guillory consulted an internist, Dr. L. Gabriel Uribe (Dr. Uribe), who referred her to a neurologist, Dr. Michael Wilensky (Dr. Wilensky). *Id.* at 2, 4. The record indicated that Dr. Wilensky performed a battery of neurological tests in May and prescribed Klonopin for dizziness. *Id.*

On May 31, 1993, Dr. Wilensky evaluated Ms. Guillory and determined that she was suffering from weakness in her legs. Slip. Op. at 4. Dr. Wilensky observed that her tandem gait was poor. *Id.* Ms. Guillory tested positive for peripheral ataxia. *Id.* Dr. Wilensky diagnosed "dizziness" and pre-

---

1. In all citations, the court abbreviates the name of the Secretary of the United States Department of Health and Human Services as "Sec'y of Health & Human Servs."

2. The following facts found by the special master or in the record before the special master are not contested.

scribed Tegretol to complement Klonopin. *Id.*

On June 7, 1993, Dr. Wilensky hospitalized Ms. Guillory for additional testing. Slip. Op. at 4. Dr. Wilensky initially diagnosed Ms. Guillory with "acute transverse myelitis" and began steroid therapy. *Id.* Ms. Guillory's motor weakness improved but she developed "more cerebellar signs" and "increased neuralgic pain in the posterior thoracic wall bilaterally." *Id.* at 5. Dr. Wilensky proceeded to review additional aspects of Ms. Guillory's medical history and this prompted him to question whether Ms. Guillory's "present condition" was "an encephalomyelitis (postvaccination type)." *Id.*

Dr. Wilensky discharged Ms. Guillory from the hospital on June 11, 1993. Slip. Op. at 5. He concluded that Ms. Guillory had "transverse myelitis with additional cerebellar signs suggestive of encephalomyelitis." *Id.* Dr. Wilensky informed Ms. Guillory that "there may be a relationship" between the Hepatitis B vaccination and her "neurologic condition" based upon "the close history of the hepatitis vaccination." *Id.*

Dr. Wilensky continued to monitor Ms. Guillory's neurological condition. *Id.* In August 1993, he stated to her that her neurological condition was associated with her Hepatitis B vaccinations and explained to her that his conclusion was arrived at by "basically a process of elimination." *Id.*

The special master held a hearing at which Ms. Guillory presented four witnesses during her case-in-chief. Slip. Op. at 2. Ms. Guillory and Dr. Souza provided fact testimony and Dr. Wilensky provided both fact and expert testimony. *Id.* Dr. Leon Weisberg (Dr. Weisberg), a neurologist who examined Ms. Guillory as part of a Louisiana Workers' Compensation Board proceeding, provided expert testimony. *Id.* Respondent presented one witness, Dr. Kottil Rammohan (Dr. Rammohan), for rebuttal expert testimony. Following the hearing, the special master issued the unpublished Memorandum Decision On Entitlement denying Ms. Guillory's request for compensation under the Vaccine Act. *Id.* at 1.

## II. Discussion

### A. Standard of Review

When deciding a motion for review of a special master's decision, the court may

(A) uphold the findings of fact and conclusions of law of the special master and sustain the special master's decision,

(B) set aside any findings of fact or conclusion of law of the special master found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law and issue its own findings of fact and conclusions of law, or

(C) remand the petition to the special master for further action in accordance with the court's direction.

42 U.S.C. § 300aa–12(e)(2). The Federal Circuit explains that the Court of Federal Claims "may set aside the decision of a special master only if the special master's fact findings are arbitrary and capricious, its legal conclusions are not in accordance with law, or its discretionary rulings are an abuse of discretion." *Turner v. Sec'y of Health & Human Servs.*, 268 F.3d 1334, 1337 (Fed.Cir. 2001) (citing 42 U.S.C. § 300aa–12(e)(2)(B); *Munn v. Sec'y of Health & Human Servs.*, 970 F.2d 863, 870 n. 10 (Fed.Cir.1992)).

### B. Allegations of Petitioner's Motion for Review

#### 1. Evidentiary Standard

■ Petitioner argues that the special master failed to apply or, alternatively, misapplied the evidentiary standard established in *Stevens v. Sec'y of Health & Human Servs.*, 2001 WL 387418 (Fed.Cl.2001). Petitioner argues that she established a prima facie case by satisfying the five prongs established in *Stevens*. *Id.* at *6–7.

Respondent argues that petitioner's argument regarding the application of *Stevens* is waived because it is raised for the first time on appeal. Respondent's Response to Petitioner's Motion for Review (Resp.) at 2–3. In addition, respondent contends that, even if the argument was timely raised, the special master was not legally obligated to apply *Stevens*. *Id.* at 3.

"Any fact or argument not raised specifically in the record before the special master shall be considered waived and cannot be raised by either party in the proceedings on review of a special master's decision." Vaccine Rule 8(f). *See also, Hellenbrand–Sztaba v. Sec'y of Health & Human Servs.*, 35 Fed. Cl. 222, 225 (1996), *aff'd* 106 F.3d 426 (Fed. Cir.1997). Petitioner did not reference *Stevens* in briefing, evidence or oral argument which was held well over a year after the opinion in *Stevens* was issued. The court finds that petitioner waived the argument that the standard in *Stevens* must apply to this case.

█ In addition, "[s]pecial masters are neither bound by their own decisions nor by cases from the Court of Federal Claims, except, of course, in the same case on remand." *Hanlon v. Sec'y of Health & Human Servs.*, 40 Fed.Cl. 625, 630 (1998). Because *Stevens* was issued by Chief Special Master Golkiewicz the findings are not precedential and the special master was not bound by *Stevens* in deciding this case.

The special master and this court are bound, however, by the decisions of the United States Court of Appeals for the Federal Circuit. In *Shyface v. Sec'y of Health & Human Servs.*, 165 F.3d 1344 (Fed.Cir.1999), the Federal Circuit determined that to establish a prima facie entitlement to compensation for a non-Table, or causation-in-fact injury, a petitioner is required "to prove, by a preponderance of the evidence, that the vaccine was not only a but-for cause of the injury but also a substantial factor in bringing about the injury." 165 F.3d at 1352. The Federal Circuit further explained that a petitioner "must show 'a medical theory causally connecting the vaccination and the injury'" to establish that the vaccine was a "substantial factor." *Id.* at 1353 (quoting *Grant v. Sec'y of Health & Human Servs.*, 956 F.2d 1144, 1148 (Fed.Cir.1992)). Additionally, "[t]here must be a 'logical sequence of cause and effect showing that the vaccination was the reason for the injury.'" *Id.* (quoting *Grant*, 956 F.2d at 1148).

█ The special master in this case analyzed the evidence before him in accordance with the standards set out in *Shyface*. *See* 165 F.3d at 1352–53. Specifically, the special master analyzed whether (1) "but for" the administration of the Hepatitis B vaccinations, the petitioner would not have been injured, and (2) whether the Hepatitis B vaccinations were a "substantial factor" in causing petitioner's injury. Slip Op. at 1. The court finds that the special master did apply the correct legal standards to the analysis of this case. *See id.* at 1–2.

2. Res Judicata

Petitioner claims to be "entitled to *res judicata*," Mot. at 11, and argues that a finding of causation by the Louisiana Fifth Circuit Court of Appeals and a reference to that finding by the special master in *Herkert v. Sec'y of Health & Human Servs.*, 2000 WL 141263 (Fed.Cl.Spec.Mstr. Jan. 19, 2000), creates binding precedent for this case. Mot. at 11–12.

█ Under the doctrine of res judicata, or claim preclusion, "'a judgment on the merits in a prior suit bars a second suit involving the same parties or their privies based on the same cause of action.'" *Jet, Inc. v. Sewage Aeration Sys.*, 223 F.3d 1360, 1362 (Fed.Cir.2000) (quoting *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 n. 5, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979)). As respondent points out, *see* Resp. at 17–18, respondent in this case was not a party to the petitioner's case in front of the Louisiana Fifth Circuit Court of Appeals and therefore the doctrine of res judicata does not apply.[3] And, if res judicata did apply, it would serve to "bar[ ] a second suit," not to provide binding precedent for the second suit. In addition, as noted above, decisions by special masters are not binding precedent. *See* Part II.B, *supra.* Therefore petitioner is not "entitled to res judicata" based on the decision in *Herkert.*

---

**3.** The court also notes that the special master acknowledged the Louisiana Court of Appeals decision and explained why it did not assist him in his deliberations. *See Guillory,* Slip. Op. at 7–8.

### 3. Application of *Daubert*

Petitioner also contends that the special master "applied strict, unreachable, and inapplicable *Daubert* standards." Mot. at 16 (referring to *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993)). Petitioner states that Dr. Wilensky's testimony was "disregarded" by the special master because the testimony did not "comport with what the special master considered to be the 'mandate' of *Daubert*." *Id.* at 12. Petitioner argues that the *Daubert* factors are intended to be "helpful, not definitive." *Id.* at 13 (citing *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 119 S.Ct. 1167, 1171, 1175, 143 L.Ed.2d 238 (1999)).

Respondent responds that the special master properly applied the *Daubert* factors when he determined that the petitioner's experts' testimony did not meet the standards of scientific reliability. Resp. at 12–13. Respondent argues that the special masters "must ensure that scientific, technical, or other specialized testimony or evidence is not only relevant, but reliable." *Id.* at 12. (citing *Knudsen v. Sec'y of Health & Human Servs.*, 35 F.3d 543, 548 (Fed.Cir.1994)).

Under *Kumho Tire*, the general principles of *Daubert* "apply broadly to 'scientific, technical, or other specialized knowledge,' and . . . the rules of evidence require that the trial judge determine 'whether the testimony has a "reliable basis in the knowledge and experience of [the relevant] discipline." ' " *Terran v. Sec'y of Health & Human Servs.*, 195 F.3d 1302, 1316 (Fed.Cir.1999) (quoting *Kumho Tire*, [526 U.S. at 149,] 119 S.Ct. at 1175 (quoting *Daubert*, 509 U.S. at 592, 113 S.Ct. 2786 (1993))).

It is apparent to the court that the special master used *Daubert* as a framework to conduct an inquiry into the reliability of the evidence. *See Terran*, 195 F.3d at 1316 (citing *Kumho Tire*, 526 U.S. at 151, 119 S.Ct. 1167). Using the *Daubert* framework, the special master determined that Dr. Wilensky's opinion amounted "only to 'subjective belief or unsupported speculation' " and that, similarly, Dr. Weisberg conceded that he "can't prove" his own theory. Slip. Op. at 7. Although the special master found both experts to be "credible" witnesses, he ultimately found that they did not "demonstrat[e] that it is legally probable that [petitioner's] Hepatitis B vaccinations caused [her] neurological condition." *Id.* at 8. In light of the record, the court does not find the special master's finding to be arbitrary or capricious or an abuse of discretion because the special master fully reviewed and considered the experts' testimony and determined that the theories of causation argued by plaintiff were not sufficiently reliable. *See Terran*, 195 F.3d at 1316.

Furthermore, the court does not read the special master's decision to "require[ ] references in Dr. Wilensky's clinical notes, as well as in his testimony, regarding a direct link between Hepatitis–B injections and neurological damage." Mot. at 13. Neither does the special master's decision "simply dismiss[ ] [plaintiff's experts' testimony] for failure to discuss peer reviewed medical literature." *Id.*

The court finds that the special master explained that the lack of citation to medical texts or medical literature by the experts was one of several reasons why the special master found the testimony to be " 'subjective belief or unsupported speculation.' " Slip. Op. at 7 (quoting *Daubert*, 509 U.S. at 590, 113 S.Ct. 2786). The special master also noted that Dr. Weisberg himself testified that he couldn't "prove" his theory and found as a fact that Dr. Wilensky did not possess " 'expertise in immunology.' " Slip. Op. at 7 (quoting Tr. at 15, 45–46, 86).

Plaintiff's arguments are not addressed to the very real defects in plaintiff's case the special master found. After considering both plaintiff's fact and expert witnesses, the special master concluded that petitioner's experts witnesses' testimony was not " 'objective [or] independent.' " Slip. Op. at 7 (quoting *Daubert v. Merrell Dow Pharmaceuticals*, 43 F.3d 1311, 1316 (Fed.Cir.1995)). The court, after reviewing the entire record, finds no basis to conclude that the special master's conclusion in this regard was in any respect "arbitrary, capricious, [or] an abuse of discretion." 42 U.S.C. § 300aa–12(e)(2)(B).

**126**

### 4. Consideration of Medical Literature

Finally, petitioner argues that the special master "refused to consider critical medical literature." Mot. at 16. Petitioner contends that the special master also erred by failing to reference the report of the Institute of Medicine (IOM Report) or the case reports of Dr. Waisbren in his decision. *Id.* at 16–17.

Respondent argues that the record is clear that the special master "considered" the case reports, Resp. at 15, and that the IOM Report did not, in any case, support petitioner's claim. *Id.* at 16. Respondent also argues that the special master is not required to comment upon every piece of evidence when his decision reflects that he fully considered the issues. *Id.* at 16–17 (citing *Murphy v. Sec'y of Health & Human Servs.*, 23 Cl.Ct. 726, 734 n. 8 (1991); *aff'd*, 968 F.2d 1226 (1992) (Table)).

 The special master has wide discretion in conducting the proceedings in a vaccine case. *Burns v. Sec'y of Health & Human Servs.*, 3 F.3d 415, 417 (Fed.Cir.1993). The court is not aware of, and petitioner does not cite to, any requirement that the special master must reference in his decision each item of evidence presented during the proceedings before the special master. The court finds that the lack of specific reference to the case reports and the IOM Report is not an indication that the special master did not consider the referenced materials. Moreover, there is nothing in the IOM Report or the case reports of Dr. Waisbren, which documents the court has reviewed as part of the record in the case, which would in any way require the court to set aside the findings or conclusions of the special master under 42 U.S.C. § 300aa–12(e)(2).

### III. Conclusion

For the foregoing reasons, petitioner's motion for review is DENIED and the decision of the special master is SUSTAINED. The Clerk of the Court shall enter judgment dismissing the petition.

IT IS SO ORDERED.