# In the United States Court of Federal Claims
OFFICE OF SPECIAL MASTERS
No. 12-584V
March 15, 2013
Not to be Published

* * * * * * * * * * * * * * * * * * * * * * * * * * * * *

| | | |
|---|---|---|
| ANTHONY LETTIERE, | * | |
| | * | |
| Petitioner, | * | |
| | * | |
| v. | * | Motion for ruling on the record; |
| | * | no expert proof that flu vaccine |
| | * | caused paresthesias, numbness, |
| SECRETARY OF HEALTH | * | gait problems |
| AND HUMAN SERVICES, | * | |
| | * | |
| Respondent. | * | |
| | * | |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * *

Isaiah R. Kalinowski, Sarasota, FL, for petitioner.
Ann D. Martin, Washington, DC, for respondent.


**MILLMAN, Special Master**

## DECISION[1]

On September 12, 2012, petitioner filed a petition for compensation under the National

Childhood Vaccine Injury Act of 1986, 42 U.S.C. § 300aa–10-34 (2006), alleging that trivalent

---

[1] Because this unpublished decision contains a reasoned explanation for the special master's action in this case, the special master intends to post this unpublished decision on the United States Court of Federal Claims' website, in accordance with the E-Government Act of 2002, Pub. L. No. 107-347, 116 Stat. 2899, 2913 (Dec. 17, 2002). Vaccine Rule 18(b) states that all decisions of the special masters will be made available to the public unless they contain trade secrets or commercial or financial information that is privileged and confidential, or medical or similar information whose disclosure would constitute a clearly unwarranted invasion of privacy. When such a decision is filed, petitioner has 14 days to identify and move to redact such information prior to the document's disclosure. If the special master, upon review, agrees that the identified material fits within the banned categories listed above, the special master shall redact such material from public access.

influenza vaccine, administered October 8, 2009, caused him paresthesias, numbness, and gait problems.

A review of the medical records filed in this case shows that many of the symptoms petitioner complains occurred after the flu vaccination were present before the vaccination. This means that petitioner would have had to have proven that flu vaccination significantly aggravated his preexisting symptoms.

Moreover, a review of the medical records shows that doctors who tested his nerve conduction velocity and muscles and gave him a physical examination determined that he had nerve root irritation at the spinal column levels of L4-S1. "L" stands for the lumbar portion of the spine. "S" stands for the sacral portion of the spine. These spinal disc problems are not the result of flu vaccination. Otherwise, doctors found petitioner to have no neurologic illness.

On November 1, 2012, the undersigned issued an Order describing the medical records and the failure of these records to reflect a flu vaccine injury. At the end of the Order, the undersigned advised petitioner's counsel to evaluate whether there was a reasonable basis to proceed with this claim.

On November 30, 2012, the undersigned held a telephonic status conference with counsel during which petitioner's counsel stated proving significant aggravation was going to be a real challenge.

On January 3, 2013, the undersigned held a telephonic status conference with counsel during which petitioner's counsel stated he discussed the case with his client.

On February 6, 2013, petitioner filed Exhibit 11, a narrative of events post-vaccination.

On February 15, 2013, the undersigned held a telephonic status conference with counsel during which petitioner's counsel said he needed to tell petitioner the problems in the case, and

2

he was inclined to file a motion for a ruling on the record. Petitioner's counsel asked the undersigned to issue an Order setting out the problems with the case. Petitioner's counsel stated he would withdraw if petitioner insisted on going forward with the case after the undersigned issued the Order.

On February 15, 2013, the undersigned issued a six-page Order describing the medical records information and the difficulties in the case.

On March 8, 2013, the undersigned held a telephonic status conference with counsel during which petitioner's counsel stated he had written to petitioner and attached the undersigned's February 15, 2013 Order.

On March 14, 2013, petitioner filed a Motion for a Decision on the Written Record. In that Motion, petitioner states at paragraph 2: "With the advice of counsel, Petitioner has elected not to pursue the written opinion of a medical expert in support of his Petition." In addition, at paragraph 5, petitioner states: "Petitioner does not deem it worthwhile to pursue prosecution of the Petition all the way to a hearing with expert witnesses."

Petitioner's medical records do not support his allegations. Hence, he has failed to make a prima facie case of causation in fact. This petition is **DISMISSED.**

## FACTS

Petitioner was born on April 21, 1956.

On March 24, 2009 (before he received flu vaccine on October 8, 2009), he visited the Family Foot and Leg Center and saw a podiatrist, Dr. Kevin K. Lam, complaining of ankle pain and foot pain. The onset of this pain was 10 years. (That means that petitioner's ankle and foot pain started in 1999, 10 years before his flu vaccination.) Petitioner's associated signs and

3

symptoms included numbness and tingling. When petitioner walked, his symptoms worsened. Raising his feet improved the condition. The problem location was in both feet, and at the left medial malleolus and the left lateral malleolus. The quality of pain was aching and it was worse at night. The severity was moderate. By the end of the weekday, petitioner's feet hurt. Occasionally, the tips of his toes on both feet felt numb. Most of the pain was in his ankles, which he described as aching and occasionally tingling. Dr. Lam went through petitioner's history. He had chronic back pain and chronic arthralgia. On physical examination, petitioner had mild effusion of the right ankle and left shoulder drop. The anterior aspect of his right ankle showed misalignment, stiffness, and swelling. Petitioner had pain on movement and on resistance as well as palpation to the long extensors bilaterally. A foot x-ray showed calcaneal bone spur noted as a retrocalcaneal spur without fracture on both feet. Dr. Lam diagnosed petitioner with osteoarthritis of both ankles, tendonitis of both extensor digitorum longus, left shoulder drop, and his left leg shorter than his right leg. Dr. Lam prescribed casting with a heel lift on the left and a corticosteroid injection. Med. recs. Ex. 8, at 10-11.

On April 6, 2009, petitioner returned to Dr. Lam. Elevation improved his condition. Petitioner received new orthotics. Id. at 8.

On July 16, 2009, petitioner saw Dr. Lam, who diagnosed him with plantar fasciitis.[2] Id. at 5.

On October 8, 2009, petitioner received influenza vaccine. Med. recs. Ex. 9, at 2.

---

[2] Plantar fasciitis is "inflammation of plantar fascia, owing to repetitive stretching or tearing of muscle fibers near their attachment to the calcaneal tuberosity; it is one of the most common causes of heel pain." Dorland's Illustrated Medical Dictionary 684 (32nd ed. 2012). One of the signs of plantar fasciitis is mild foot swelling or redness. "Plantar Fasciitis," A.D.A.M. Medical Encyclopedia, www.ncbi.nlm.nih.gov/pubmedhealth/PMH0004438 (last visited Mar. 15, 2013).

Fifty-five days (or almost two months) later, on December 2, 2009, petitioner returned to Dr. Lam for a follow-up evaluation of his foot pain. Petitioner told Dr. Lam that the quality of pain was intermittent and burning in both feet. They were throbbing. The condition had existed for an extended period of time. Walking worsened the condition. Petitioner told Dr. Lam there was no precipitating event, history or treatment for this condition. Petitioner noted that soaking his feet in ice water helped. Lying down also helped. Petitioner noted that his feet felt hot, tingled, and sometimes swelled. He saw a chiropractor three times a week for foot manipulation. The pain was upon the path of the nerve upon percussion and palpation at the posterior tibial nerve bilaterally with a positive Tinel's sign and the plantar digital nerve at the second interspace and third right interspace. He had mild right effusion of the ankle. Dr. Lam diagnosed petitioner with osteoarthritis of both ankles and mononeuritis of his posterior tibial nerve in both feet. He also diagnosed petitioner with neuroma[3] of the second and third interspaces on the right and prescribed corticosteroid injections. Med. recs. Ex. 8, at 33-4.

On January 8, 2010, petitioner saw Dr. Anthony D'Agostino, stating he had redeveloped symptoms he had been complaining about in prior visits: some facial flushing, mild headache, and significant burning sensation in both legs, especially his feet. Petitioner was seeing a podiatrist and using orthotics. He received cortisone injections. Petitioner's mother has fibromyalgia. Dr. D'Agostino did a neurologic examination of petitioner and found it unremarkable, that is, there was nothing neurologically wrong with petitioner. He had normal muscle tone without any atrophy or abnormal movements. Med. recs. Ex. 2, at 20.

---

[3] A neuroma is "a tumor growing from a nerve or made up largely of nerve cells and nerve fibers." Dorland's at 1266.

On February 16, 2012, petitioner had an electromyography and nerve conduction study done which showed mild left peroneal conduction velocity slowing and left to right tibial motor amplitude loss. Dr. Michael J. Vickers, a neurologist, wrote that the findings were consistent with an active nerve root irritation on the right side of petitioner's lumbar and sacral spines at the L4-S1 levels. Med. recs. Ex. 7, at 5.

On April 5, 2012, petitioner saw Dr. Vickers again. Dr. Vickers noted that the EMG showed that petitioner's peripheral nerves were normal. However, he had active L4, L5, and S1 irritation on the right side of his spinal column. Id. at 2.

On April 6, 2012, petitioner saw Dr. Aleksandra Granath, a rheumatologist, who commented that the nerve conduction study showed right L4-S1 nerve root irritation which did not explain the diffuse character of petitioner's lower extremity paresthesias. The character of his pain was not characteristic for inflammatory arthropathy. Petitioner did not have synovitis or other symptoms of systemic autoimmune disease. Med. recs. Ex. 1, at 2, 3, 4.

On May 6, 2012, petitioner returned to Dr. Granath who noted that an autoimmune work-up on petitioner came back negative except for a positive CCP.[4] Petitioner did not have physical findings characteristic of systemic autoimmune disease. He had no synovitis. He denied significant stiffness or joint swelling. He had no indication for immunosuppression. Id. at 5.

## DISCUSSION

Petitioner's burden is to prove that flu vaccine caused his paresthesias, numbness, and gait problems. The Vaccine Act does not permit the undersigned to rule for petitioner based

---

[4] CCP stands for "cyclic citrullinated peptide." Dorland's at 310. CCP antibodies are specific for diagnosis of rheumatoid arthritis because their presence indicates rheumatoid arthritis. "CCP," Lab Tests Online, www.labtestsonline.org.uk/understanding/analytes/ccp/tab/test (last visited Mar. 15, 2013).

solely on his allegations unsupported by medical records or medical opinion. Section 300aa-13(a) (1). Petitioner has not filed medical records or medical opinion that supports his allegations. Nothing in these medical records consists of a doctor stating that petitioner's symptoms are due to flu vaccine. Moreover, petitioner complained of paresthesias, numbness, and gait problems since 1999. Petitioner would have had to have proven that flu vaccine significantly aggravated these problems in order to prevail, but again there are no medical records or expert medical opinion to support this assertion.

To satisfy his burden of proving causation in fact and/or significant aggravation, petitioner must prove by preponderant evidence: "(1) a medical theory causally connecting the vaccination and the injury; (2) a logical sequence of cause and effect showing that the vaccination was the reason for the injury; and (3) a showing of a proximate temporal relationship between vaccination and injury." Althen v. Sec'y of HHS, 418 F.3d 1274, 1278 (Fed. Cir. 2005). Petitioner has not met this burden.

Petitioner must show not only that but for flu vaccine, he would not have paresthesias, numbness, and gait problems, but also that flu vaccine was a substantial factor in causing his paresthesias, numbness, and gait problems. Shyface v. Sec'y of HHS, 165 F.3d 1344, 1352 (Fed. Cir. 1999). This he has not done.

His affidavit specifying that he did not have problems before he received flu vaccine is belied by the contents of the medical records. Moreover, the Vaccine Act forbids the undersigned to rule in petitioner's favor "based on the claims of a petitioner alone, unsubstantiated by medical records or by medical opinion." 42 U.S.C. § 300aa-13(a) (1). Petitioner has not filed medical records or medical opinion in support of his claims.

7

This petition is hereby **DISMISSED** for failure to make a prima facie case.

**CONCLUSION**

Petitioner's petition is **DISMISSED**.  In the absence of a motion for review filed

pursuant to RCFC Appendix B, the clerk of the court is directed to enter judgment herewith.[5]

**IT IS SO ORDERED.**

Dated: <u>March 15, 2013</u>                                    <u>       s/Laura D. Millman       </u>
                                                                        Laura D. Millman
                                                                   Special Master

---

[5] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by each party's filing a notice renouncing the right to seek review.