Dissenting opinion filed by Circuit Judge DYK.
RADER, Circuit Judge.
Richelle Pafford (Pafford) alleges that her DTaP, MMR and OPV vaccinations resulted in the onset of systemic Juvenile Rheumatoid Arthritis.[1] Pafford v. Sec’y Of Health & Human Sews., 2004 WL 1717359 (Ct.Fed.Cl.2004) (Trial Court Decision). Because the Special Master correctly interpreted and applied the relevant statutory test for proving causation in off-table cases, this court affirms.
I
On March 24, 1998, Pafford received a series of vaccinations from her doctor, Dr. Jay Schmidt (Dr. Schmidt). Trial Court Decision, 2004 WL 1717359, at *1. The *1354 vaccinations administered by Dr. Schmidt during this office visit included a DTaP vaccination, Pafford’s fourth OPV vaccination, and a second MMR vaccination. Id. Pafford had received routine childhood immunizations prior to this. Both her first and second DTP, OPV, and Hib vaccinations were normal.[2] Id. However, she developed a faint maculopapular rash approximately seventeen days after receiving her third DTP and OPV vaccinations and her first MMR vaccination. Id.
Earlier that month, on March 5, 1998, Dr. Schmidt had treated Pafford for a cold and diarrhea. Approximately one week later, on March 12, 1998, Pafford was seen by Dr. Schmidt for inflamed tonsils with white patches on them and a fever of 101-102 degrees Fahrenheit. Id. She tested negative for strep. Id. At her March 24, 1998 visit, Dr. Schmidt examined Pafford and noted that the tonsillitis had cleared. Id. As was the case throughout her early childhood years, Dr. Schmidt concluded that Pafford was showing normal growth and development without any unusual medical problems. Id.
On April 4, 1998, Pafford developed a fever and complained of neck pain. Id. The fever resolved itself, but the neck pain continued. Id. Dr. Schmidt saw Pafford on April 7, 1998 for her neck pain. Id. By that time, she had developed a diffuse, pink, macular rash, whitish spots on her tongue. Id. She also complained of limb pain. Id. Dr. Schmidt diagnosed her with a vaccine-induced rash and recommended that she avoid exposure to others for five days. Id. On April 13, 1998, Pafford was taken to a local hospital emergency room with a fever, vomiting, pain on being touched and a rash on her hands, legs, chest, and upper abdominal area. Id. at *2. The hospital doctor, Dr. Bell, noted that “[t]he rash was very viral in character and I did not feel it was related to her immunizations but suggested a CBC to see if it supported the viral picture.” Id. Paf-ford was admitted and her symptoms quickly dissipated. Id. She tested positive for a bacterial infection known as “myco-plasma” which Dr. Bell determined to be the cause of Pafford’s symptoms. Id. She was released from the hospital the next day because her rash and fever had disappeared. Id. On April 20, 1998, Dr. Bell saw Pafford for a recurrence of her symptoms. Dr. Bell diagnosed Pafford with systemic onset Juvenile Rheumatoid Arthritis, also known as Still’s disease. Id.
Pafford’s parents, on behalf of Pafford, brought a claim under the National Childhood Vaccine Injury Act, 42 U.S.C. §§ 300aa-l to 34, in the Court of Federal Claims. They alleged that their daughter’s development of Still’s disease was a result of the vaccinations she received on March 24, 1998. Id. at *1. On July 16, 2004, Special Master Richard Abell issued a decision denying Pafford’s claim. Id. Special Master Abell determined that a vaccine can cause Still’s disease but that Pafford had not sufficiently demonstrated that in her case the vaccine did cause the development of Still’s disease. Id.
Following an appeal, Court of Federal Claims Judge Lawrence J. Block issued an opinion sustaining the Special Master’s decision. Pafford v. HHS, 64 Fed.Cl. 19 (2005). Pafford filed a motion for reconsideration alleging “legal error with regard to standards of proof and the allocation of *1355 burdens” which was denied on March 8, 2005.
II.
This court reviews the United States Court of Federal Claims’ review of the Special Master’s decision without deference. Hines v. Sec’y of Health & Human Servs., 940 F.2d 1518, 1528-24 (Fed.Cir.1991). Thus, this court examines the Special Master’s legal determinations under a “not in accordance with law” standard and factual determinations under an “arbitrary and capricious” standard. Munn v. Sec’y of Health & Human Servs., 970 F.2d 868, 870 n. 10 (Fed.Cir.1992).
Generally a petitioner can obtain compensation under the vaccine injury program in two ways. See id. at 865. In a “table” case, the petitioner has an initial burden to prove an injury listed in the Vaccine Injury Table within the prescribed time period under the requirements of 42 U.S.C. § 300aa-14(a). See Capizzano v. Sec’y of Health & Human Servs., 440 F.3d 1317, 1319 (Fed.Cir.2006) (citations omitted). Upon satisfying this initial burden, the petitioner earns a presumption of causation. At that point, the burden shifts to the respondent to prove that a factor unrelated to the vaccination actually caused the illness, disability, injury, or condition. 42 U.S.C. §§ 300aa-13(a)(l)(A),(B).
The other avenue for compensation does not involve the presumption of causation conferred by the table. In an “off-table” case (also known as a “causation-in-fact” claim), the petitioner cannot obtain a presumption of causation. Rather, the petitioner in an off-table case has the burden to prove the vaccination in question “caused” the illness, disability, injury, or condition. 42 U.S.C. §§ 300aa-13(a)(l), - ll(c)(l)(C)(ii)(I). Pafford does not allege she suffered a table injury. Thus, Pafford must prove causation-in-fact or that the vaccine was actually the cause of her injuries.
Under this court’s precedent, Pafford must prove by preponderant evidence both that her vaccinations were a substantial factor in causing the illness, disability, injury or condition and that the harm would not have occurred in the absence of the vaccination. Shyface v. Sec’y of Health & Human Servs., 165 F.3d 1344, 1352 (Fed.Cir.1999) (“We adopt the Restatement rule for purposes of determining vaccine injury, that an action is the ‘legal cause’ of harm if that action is a ‘substantial factor’ in bringing about the harm, and that the harm would not have occurred but for the action.”). This court recently articulated an alternative three-part test. To show causation in fact, the petitioner must show:
(1) a medical theory causally connecting the vaccination and the injury;
(2) a logical sequence of cause and effect showing that the vaccination was the reason for the injury; and (3) ... a proximate temporal relationship between the vaccination and injury.
Capizzano, 440 F.3d at 1324 (citing Althen v. Sec’y of Health & Human Servs., 418 F.3d 1274, 1278 (Fed.Cir.2005)). Of course, as noted in Shyface, these prongs must cumulatively show that the vaccination was a “but-for” cause of the harm, rather than just an insubstantial contributor in, or one among several possible causes of, the harm.
The Special Master applied the tests of Althen and Shyface correctly in this case. Specifically, the Special Master indicated:
First, a petitioner must provide a reputable medical theory causally connecting *1356 the vaccination and the injury. In fine> can [the] vaccine(s) at issue cause the type of injury alleged? Second, a petitioner must also prove that the vaccine actually caused the alleged symptoms in her particular case.
Trial Court Decision, 2004 WL 1717359, at *4 (emphasis in original). The first prong of the Special Master’s test is identical to the first prong of the Althen test. Capizzano, 440 F.3d at 1324 (citing Althen, 418 F.3d at 1278). The Special Master’s inquiry also gave effect to the “logical sequence of cause and effect” at the heart of the second prong of the Althen test. Trial Court Decision, 2004 WL 1717359, at *6 (discussing Dr. Levin’s testimony linking Pafford’s March 1998 vaccinations to the onset of Still’s disease). Most importantly, the second prong of the Special Master’s test in this case restates correctly that the petitioner must show that the vaccine was the “but for” cause of the harm according to Shyface, or in other words, that the vaccine was the “reason for the injury” as stated in the second prong of the Althen test. Finally, the Special Master also required proof of a proximate temporal relationship between Pafford’s vaccinations and the onset of Still’s disease commensurate with the third prong of the Althen test. Trial Court Decision, 2004 WL 1717359, at *9 (“The link missing from Petitioner’s argument ... was the lack of any defined time period in which one would expect to see the onset of Still’s disease subsequent to a triggering event.”). Thus, this court perceives no significant difference between the Special Master’s test and that established by this court in Althen and Shyface.
III.
This court turns next to the evidence of record on causation-in-fact. Notably, the causation evidence of record consists primarily of testimony from two of Pafford’s experts, Drs. Levin and Geier, and scientific literature on which their testimony was based. As discussed below, this court finds it was not arbitrary and capricious for the Special Master to conclude on this record that Pafford did not prove causation by preponderant evidence.
Applying the causation test to the facts before the court, the Special Master determined that Pafford proved only one of the two prongs of his test by preponderant evidence. Specifically, the Special Master noted, while “it is biologically plausible that one or more of the vaccinations at issue could cause the onset of Still’s disease[,]” Trial Court Decision, 2004 WL 1717359, at *5, Pafford did not prove that the vaccinations were a but-for cause of her contracting Still’s disease (i.e., Pafford failed to satisfy the “but-for” prong of the Shyface test), id. at *9. The Special Master was particularly troubled by the lack of evidence demonstrating “any defined time period in which one would expect to see the onset of Still’s disease subsequent to a triggering event.” Id.
To the Special Master, the absence of temporal linkage evidence prevented him from finding that a vaccination was the reason for the injury rather than other contemporaneous events unrelated to the vaccinations. Id. at *7 (“[AJbsent an appropriate time frame, the Court cannot find the mere temporal proximity of the vaccination and injury dispositive.”). These contemporaneous events included: (1) a positive test for mycoplasma (a type of bacteria); (2) x-rays showing a thickening of the sinus membrane consistent with a sinus infection; (3) an earlier bout of tonsillitis; and (4) an earlier cold accompanied by diarrhea. Id. at *8. Thus, accord *1357 ing to the Special Master, Pafford did not prove by preponderant evidence that one or more of her vaccinations were a “but-for” cause of her contracting Still’s disease.
On appeal, Pafford argues “[t]he special master placed an untoward and legally impermissible burden on petitioners” as part of the but-for inquiry to prove it was the vaccinations rather than the other contemporaneous events that triggered her Still's disease. Brief for Pafford at 54, Pafford v. Sec’y of Health & Human Servs., No. 05-5106, 451 F.3d 1352, 2006 WL 1679714 (Fed.Cir.2006) (Petitioner’s Brief), see Trial Court Decision, 2004 WL 1717359, at *4 (“Ruling out other potential causes is an essential element but does not itself establish causation.”). Paf-ford argues that “[t]his is contrary to the express terms of the statute, whereby § 300aa-13 (a)(1)(B) contemplates the grant of compensation unless alternate causation by known factors is shown ‘by a preponderance.’ ” Petitioner’s Brief at 54 (emphasis in original). Pafford relies primarily on two of this court’s cases, Shyface and Grant (as interpreted by Shyface) for the proposition that a petitioner need not rule out alternative causes in proving actual causation.
Contrary to Pafford’s reading, Shyface and Grant do not stand for this premise. Shyface was a vaccine injury case involving an infant’s April 1, 1993 DPT vaccination.[3] Shyface v. Sec’y of Health & Human Servs., 1997 WL 829404, at *1 (Ct.Fed.Cl.1997), rev’d, 165 F.3d 1344 (Fed.Cir.1999). Four days after inoculation, the infant was taken to a hospital with a fever hovering between 109 and 110° F; tragically the infant died from the fever the same day. Id. at *2. Subsequent tests revealed the presence of a bacterial infection that could not be ruled out as the cause of death. Id. Thus, at trial, petitioners’ expert theorized the DPT vaccination “caused” the infant’s fever, which was then significantly exacerbated by the infection. Id. at *5. In other words, petitioners’ expert argued there were two “but-for” causes, the vaccination and the infection, each of the “but-for” causes being a substantial factor in the infant’s death. When presented with this theory, the Special Master found preponderant evidence linking the DPT vaccination to the infant’s death, but still rejected petitioners’ claim because “it is impossible to know with any degree of confidence, which source is the predominant cause of death.” Id. at *8.
On appeal, this court reversed. Shyface, 165 F.3d at 1353. This court held that, in order to establish a prima facie case, the petitioners had to show “that the DPT vaccine was both a but-for cause of and a substantial factor in [the infant’s] death.” Id. The court went on to explain that, while the vaccination must be a “substantial factor” in the infant’s death, it need not be the sole factor or even the predominant factor. Id. at 1352-53. Thus, the court reversed the Special Master’s decision in favor of respondent; the Special Master should have awarded compensation to the petitioners who had proven the DPT vaccine was both a but-for cause of and a substantial factor in the infant’s death. Id. at 1353.
Unlike Shyface, the petitioner here never established that the vaccinations were a but-for cause of her contracting Still’s dis *1358 ease. Thus, this case does not feature several “but-for” causes, one of which is a vaccination. Rather, the Special Master concluded he was unable to tell whether any of the vaccinations made any contribution to her contracting Still’s disease due, in part, to the absence of “evidence indicating an appropriate time frame in which Still’s disease will manifest subsequent to a triggering event.” Trial Court Decision, 2004 WL 1717359, at *7. “Without such a defined time period, the link between the vaccinations and the injury is tenuous.” Id. at *9. As noted earlier, this reasoning applies properly the tests of Althen and Shyface.
Evidence demonstrating petitioner’s injury occurred within a medically acceptable time frame bolsters a link between the injury alleged and the vaccination at issue under the “but-for” prong of the causation analysis. See Capizzano, 440 F.3d at 1326 (finding medical opinions that explain how a vaccine can cause the injury alleged coupled with evidence demonstrating a close temporal relationship “are quite probative” in proving actual causation). If, for example, symptoms normally first occur ten days after inoculation but petitioner’s symptoms first occur several weeks after inoculation, then it is doubtful the vaccination is to blame. In contrast, if symptoms normally first occur ten days after inoculation and petitioner’s symptoms do, in fact, occur within this period, then the likelihood increases that the vaccination is at least a factor. Strong temporal evidence is even more important in cases involving contemporaneous events other than the vaccination, because the presence of multiple potential causative agents makes it difficult to attribute “but-for” causation to the vaccination. After all, credible medical expertise may postulate that any of the other contemporaneous events may have been the sole cause of the injury. Thus, it was entirely proper for the Special Master to require Pafford to prove but-for causation, including some showing of temporal relationship between the vaccination(s) and the onset of injury.
Moreover, the Special Master’s requirement for strong temporal evidence is consistent with the third prong of the Althen test: demonstrating a proximate temporal relationship between the vaccination and the injury. See Althen, 418 F.3d at 1278. Again, without some evidence of temporal linkage, the vaccination might receive blame for events that occur weeks, months, or years outside of the time in which scientific or epidemiological evidence would expect an onset of harm.
Turning to the evidence of record, neither of Pafford’s two experts, Drs. Levin and Geier, provided sufficient evidence for the Special Master to conclude the onset of Still’s disease occurred within the medically acceptable time frame. Dr. Levin explained that the DTaP, MMR and OPV vaccines can, in some individuals, trigger an autoimmune inflammatory disorder that causes the release of cytokines,[4] which in turn cause the symptoms of Still’s disease. Trial Court Decision, 2004 WL 1717359, at *5. Dr. Levin did not, however, provide any evidence about a medically acceptable time frame for the onset of the disease following the vaccination. Transcript of Record at 172-173, Pafford v. Sec’y of Health & Human Servs., No. 01-165V, 2004 WL 1717359 (Ct.Fed.Cl.2004) (Trial *1359 Transcripts) (emphasis added). Dr. Lev-in also did not discuss in detail the other contemporaneous events unrelated to the vaccinations. Thus, the Special Master properly concluded, under our arbitrary and capricious standard of review, that Dr. Levin’s testimony standing alone was not sufficient to prove the medically acceptable time frame or to link the onset of Still’s disease to the vaccinations in this case.
In addition to Dr. Levin, Dr. Geier sought to provide testimony on this point. Specifically, Dr. Geier testified about the medically acceptable time frame for ar-thralgia episodes and joint syndromes generally. Trial Transcripts at 39-40; Petitioner’s Brief at 10. The Special Master found Dr. Geier’s testimony (and the scientific literature on which his testimony was based) insufficient for at least two reasons. In the first place, the Special Master noted correctly that evidence about the temporal relationship for arthralgia episodes and joint syndromes in general does not show the specific temporal relationship for Still’s disease. Trial Court Decision, 2004 WL 1717359, at *7 n. 42. The Special Master also questioned Dr. Geier’s qualifications because he is not certified in the areas of rheumatology, pathology, or immunology. Id. at *1 n. 2. Notably, this court accords great deference to a Special Master’s determination on the probative value of evidence and the credibility of witnesses. See Lampe v. Sec’y of Health, & Human Servs., 219 F.3d 1357, 1360 (Fed.Cir.2000) (noting that the probative value of the evidence and the credibility of the witnesses are matters within the purview of the fact finder). On this record, the court cannot discern any reversible error in the Special Master’s findings that Dr. Geier did not prove the temporal relationship between Still’s disease and the vaccination.
Without credible testimony from either Dr. Geier or Dr. Levin on the medically acceptable time frame, the record contains little evidence linking Still’s disease to the vaccinations in this particular case and leaves Pafford without adequate evidence to show “but-for” causation under this court’s causation standards. See Trial Court Decision, 2004 WL 1717359, at *1 (“Petitioners provide no objective evidence indicating an appropriate time frame in which Still’s disease will manifest subsequent to a triggering event.”). Without a link between Still’s disease and the vaccinations, the Special Master properly introduced the presence of the other unrelated contemporaneous events as just as likely to have been the triggering event as the vaccinations. Id. at *8. Hence, petitioner did not show it was more likely that the vaccinations were a but-for cause of and a substantial factor in her contracting Still’s disease.
IV.
In her final argument, Pafford alleges the Special Master committed a Due Process violation by raising the medically accepted time frame issue sue sponte at the close of trial, without providing her a full and fair opportunity to present evidence on this issue. The record, however, shows that the petitioner knew of the medically accepted time frame issue well before the end of the trial and chose to rely on Dr. Geier to provide the required evidence. Response to Order to Show Cause & Motion for Inclusion in “Omnibus” Rubella Arthritis Cases at 1-2, Pafford v. Sec’y of Health & Human Servs., No. 01-165V (Ct.Fed.Cl.2001) (asserting “the onset of Still’s disease appears to fit within the bounds of biological plausibility and medically significant temporal relationship to vaccination” in view of literature associating the condition with rubella vaccine); *1360 Petitioner’s Brief at 30 (“Petitioners’ had determined the[y] would rely on Dr. Geier to address ... the ‘time frame’ element _”). While Dr. Geier did not supply sufficient admissible evidence to satisfy this critical portion of the causation test, Pafford’s admitted reliance on Dr. Geier in this regard impeaches her Due Process argument.
V.
In summary, the Special Master did not err in requiring specific evidence about a medically acceptable time frame linking the onset of Still’s disease to the vaccinations at issue. In the absence of such evidence, the court cannot say the Special Master’s finding that Pafford failed to prove causation by preponderant evidence was arbitrary and capricious. Thus, this court affirms.
COSTS
Each party shall bear its own costs.

AFFIRMED

. DTaP stands for diphtheria, tetanus (commonly known as lockjaw), and pertussis (commonly known as whooping cough.) OPV stands for oral poliovirus vaccine.

. DPT is an older version of the DTaP vaccination. Hib stands for Haemophilus Influen-zae Type b vaccine.

. DPT is an older version of the DTaP vaccination. This vaccination is given for the prevention of diphtheria, pertussis, and tetanus.

. Cytokine: “a generic term for non-antibody proteins released by one cell population on contact with a specific antigen, which act as intercellular mediators, as in the generation of an immune response.” Trial Court Decision, 2004 WL 1717359, at *5 n. 29.